1  D. EDWARD HAYS, #162507
ehays@marshackhays.com
2  AARON E. DE LEEST, #216832
adeleest@marshackhays.com
3  CHAD V. HAES, #267221
chaes@marshackhays.com
4  MARSHACK HAYS WOOD LLP
870 Roosevelt
5  Irvine, California 92620
Telephone: (949) 333-7777
6  Facsimile: (949) 333-7778

7  Attorneys for Richard A. Marshack,
Plaintiff and Trustee of the LPG Liquidation Trust
8

9            UNITED STATES BANKRUPTCY COURT

10      CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

11

| 12 | In re | Case No. 8:23-bk-10571-SC |
|---|---|---|
| 13 | THE LITIGATION PRACTICE GROUP P.C., | Chapter 11 |
| 14 | Debtor. | Adv. No. |
| 15 | | COMPLAINT FOR: |
| 16 | RICHARD A. MARSHACK, Trustee of the LPG Liquidation Trust, | (1) AVOIDANCE, RECOVERY, AND PRESERVATION OF ACTUAL FRAUDULENT TRANSFERS [11 U.S.C. §§ 544, 548(a)(1)(A), 550, 551; CAL. CIV. CODE §§ 3439.04(a)(1) AND 3439.07]; |
| 17 | Plaintiff, | |
| 18 | v. | |
| 19 | | (2) AVOIDANCE, RECOVERY, AND PRESERVATION OF CONSTRUCTIVE FRAUDULENT TRANSFERS [11 U.S.C. §§ 544, 548(a)(1)(B); 550, 551; CAL. CIV. CODE §§ 3439.04(a)(2), 3439.05, AND 3439.07]; AND |
| 20 | INLANE INC, a New York Corporation and DOES 1 through 20, inclusive, | |
| 21 | Defendant. | |
| 22 | | |
| 23 | | (3) DISALLOWANCE OF CLAIMS HELD BY DEFENDANT [11 U.S.C. § 502(d)] |
| 24 | | |
| 25 | | [STATUS CONFERENCE TO BE SET BY COURT] |

26  / / /

27  / / /

28  / / /

1

COMPLAINT

4900-8689-3601,v.1

1    Richard A. Marshack, solely in his capacity as Trustee of the LPG Liquidation Trust, files

2  this complaint against Inlane Inc, a New York Corporation ("Defendant") and Does 1 through

3  20, inclusive, (collectively, "Doe Defendants"), and alleges as follows:

**Statement of the Case**

5    1.    A bankruptcy trustee can avoid a debtor's fraudulent transfers of property. In this

6  case, Trustee alleges that Debtor's insiders ("LPG Insiders") established one or more entities,

7  including Vulcan Consulting Group LLC dba DRD and Prime Logix LLC (collectively, "Sham

8  Entities"). The LPG Insiders then caused monies paid to and belonging to Debtor to be deposited in

9  one or more accounts nominally titled in the name of Sham Entities. Such funds were not

10  "transferred," as that term is defined in 11 U.S.C. § 101(54), to Sham Entities. Instead, the beneficial

11  and equitable ownership of the funds always remained Debtor's property. The LPG Insiders took

12  these actions to keep Debtor's cash outside the reach of creditors. At least $80,607.14 of such funds

13  belonging to Debtor were then transferred to Defendant. In addition, at least $15,691.61 was

14  transferred directly from Debtor to Defendant. The funds transferred to Defendant from the accounts

15  nominally titled with Sham Entities and from the Debtor itself are collectively referred to as the

16  "Transfers." Trustee alleges that some or all of the Transfers were then subsequently transferred by

17  Defendant to one or more of the Doe Defendants. The Transfers to Defendant occurred during the

18  four-year-period prior to the petition date.

19    2.    Under these facts, the Trustee can avoid the Transfers and recover from Defendant as

20  the "initial" transferee of such transfers and/or from Doe Defendants as "subsequent" transferees

21  who did not take in good faith, for value, and without knowledge of the avoidability of such

22  transfers. The Trustee alleges that neither the Defendant nor any of the Doe Defendants received the

23  Transfers in good faith, for value, and without knowledge of their avoidability.

**Statement of Jurisdiction and Venue**

25    3.    The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C.

26  §§ 157 and 1334 in that this action arises in and relates to the bankruptcy case pending in the United

27  States Bankruptcy Court for the Central District of California, Santa Ana Division, entitled *In re The*

28  *Litigation Practice Group, P.C.*, Bankruptcy Case Number 8:23-bk-10571-SC.

COMPLAINT

4900-8689-3601,v.1

1     4.     Plaintiff has standing to bring this adversary proceeding pursuant to Provision V.E. of

2 the Modified First Amended Joint Chapter 11 Plan of Liquidation, confirmed by the Court on

3 September 9, 2024, as Dk. No. 1646. The Plan provides that the Estate's litigation claims, including

4 avoidance claims, were transferred to the LPG Liquidating Trust. Plaintiff brings these claims on

5 behalf of the Trust.

6     5.     This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B),

7 (E), (H), and (O), and this Court has Constitutional authority to enter a final judgment on these

8 claims. To the extent any claim for relief contained herein is determined not to be a non-core

9 proceeding or a *Stern*-claim, Plaintiff consents to the entry of final judgment and orders by the

10 Bankruptcy Court.

11     6.     Venue properly lies in the Central District of California in that this adversary

12 proceeding arises in or is related to a case under Title 11 of the United State Code as provided in

13 28 U.S.C. §§ 1408 and 1409.

**Parties**

15     7.     The Litigation Practice Group P.C. (previously defined as "Debtor") is a corporation

16 organized under the laws of the State of California, that had its principal place of business in Tustin,

17 California. During all relevant times prior to bankruptcy, Daniel S. March ("Mr. March") was the

18 Chief Executive Officer of Debtor.

19     8.     On March 20, 2023 ("Petition Date"), the Debtor filed a voluntary petition under

20 Chapter 11 of Title 11 of the United States Code, initiating bankruptcy Case No. 8:23-bk-10571-SC

21 ("Bankruptcy Case") in the United States Bankruptcy Court for the Central District of California,

22 Santa Ana Division.

23     9.     Richard A. Marshack (previously defined as "Trustee" or "Plaintiff") was the duly-

24 appointed, qualified, and acting Chapter 11 Trustee for the Debtor's bankruptcy estate ("Estate").

25 Pursuant to the confirmed Plan, the Trustee now serves as Trustee of the LPG Liquidation Trust,

26 which now owns all of the litigation claims, including the Estate's avoidance actions.

27     10.     Plaintiff alleges that, at all relevant times, Defendant was a domestic corporation

28 authorized to do business in the state of California and formed and existing under the laws of the

COMPLAINT
4900-8689-3601,v.1

1  State of New York. Defendant's address and/or principal place of business is 16 Piper Dr,

2  Albertson, NY 11507.

3      11.    Plaintiff is ignorant of the true names and capacities of the Doe Defendants and,

4  therefore, sues said defendants under such fictitious names. Plaintiff will amend this Complaint to

5  reflect the true names and capacities of such defendant(s) when they have been ascertained. Plaintiff

6  is informed and believes, and based thereon alleges, that each of the fictitiously named individuals

7  and/or entities are responsible in some manner for the occurrences alleged herein and proximately

8  caused Plaintiff's damages by their conduct. Plaintiff is informed and believes, and based thereon

9  alleges, that the fictitiously named defendants may constitute individuals, unknown trusts,

10  partnerships, related entities, owners, principals, shareholders, insiders, alter egos, co-conspirators,

11  and aiders and abettors that: (a) received transfers from Debtor and/or Sham Entities as an initial,

12  immediate, or mediate transferee; (b) received transfers from Defendant as a mediate transferee;

13  (c) directed or controlled Defendant's conduct and, as such, were responsible in some manner for

14  the occurrences alleged herein; and/or (c) were used to shield Debtor's assets from collection, levy

15  or execution, and to otherwise, hinder, delay and defraud the Debtor and its creditors.

16                                    **General Allegations**

17      **A.    The Bankruptcy Case**

18      12.    Pre-petition, Debtor was a law firm that provided consumer debt resolution services

19  to more than 50,000 clients nationwide.

20      13.    Tony Diab ("Mr. Diab") owned, operated, dominated and controlled the Debtor.

21      14.    On May 8, 2023, Trustee accepted his appointment as the Chapter 11 Trustee in the

22  Bankruptcy Case. To the extent that Trustee was not appointed until after any of the events alleged

23  in this Complaint, the allegations are based on information and belief. *See Soo Park v. Thompson*,

24  851 F.3d 910, 928 (9th Cir. 2017); *Miller v. City of Los Angeles*, 2014 U.S. Dist. LEXIS 198871, at

25  *5 (C.D. Cal. Aug. 7, 2014); *Mireskandari v. Daily Mail and General Trust PLC*, 2013 U.S. Dist.

26  LEXIS 194437, at *4 (C.D. Cal. July 31, 2013).

27  / / /

28  / / /

COMPLAINT
4900-8689-3601,v.1

**B.      Fraudulent Entities**

15.      To keep Debtor's interests in property outside the reach of creditors, including funds paid by Debtor's clients pursuant to their written Legal Services Agreements with Debtor, the LPG Insiders created one or more sham entities to receive and hold Debtor's property.

16.      The Debtor's primary assets were its rights to receive monthly ACH payments from its consumer clients. In the full year prior to bankruptcy, Debtor's Statements of Financial Affairs evidence that it received revenues totaling approximately $155 million.

17.      Under applicable state and federal laws, ACH pulls from a consumer's bank account can occur until the party initiating the payments obtains the consumer's express written consent.

18.      With respect to the alleged Transfers, the consumer clients only consented to the Debtor initiating the payments from their accounts.

19.      With respect to the alleged Transfers, the funds were derived from consumer clients that never consented to any law firm other than the Debtor representing them.

20.      At all times, the Transfers constituted transfers of interests of the Debtor in property as that term is defined in 11 U.S.C. § 101(54).[1]

**C.      Ponzi Scheme**

21.      This Court has recognized that Debtor operated a Ponzi scheme by using funds provided by former investors to attract new investors hoping for very high returns. *See* Dk. No. 1545, fn. 5.

---

[1] To the extent the LPG Insiders are adjudicated to be initial transferees of the Transfers, the omission of the LPG Insiders in this Complaint is not fatal to the fraudulent transfer claims set forth herein. *See Erickson v. Leonard* (*In re AVI, Inc.*), 389 B.R. 721, 735 (9th Cir. BAP 2008) ("[W]e hold that a trustee is not required to avoid the initial transfer from the initial transferee before seeking recovery from subsequent transferees under § 550(a)(2)."); *IBT Intern., Inc. v. Northern* (*In re Int'l Admin. Servs., Inc,*), 408 F.3d 689, 708 (11th Cir. 2005) ("Section 550(a) does not mandate a plaintiff to first pursue recovery against the initial transferee and successfully avoid all prior transfers against a mediate transferee."); *Leslie v. Ace Gallery N.Y. Corp.* (*In re Art & Architecture Books of the 21st Century*), 2021 Bankr. LEXIS 3637, *98 (Bankr. C.D. Cal. 2022) ("The language of 11 U.S.C. § 550 does not require a trustee to successfully avoid a transfer with respect to the initial transferee in order to recover from a subsequent transferee under 11 U.S.C. § 550."); *In re M. Fabrikant & Sons, Inc.*, 394 B.R. 721, 743 (Bankr. S.D.N.Y. 2008) ("[T]he Bankruptcy Code, and specifically §§ 544(b) and 548, does not identify the proper, necessary or indispensable parties to a fraudulent transfer action, and does not state that the initial transferee is necessary.").

COMPLAINT
4900-8689-3601,v.1

22.     The Ponzi Scheme Presumption establishes a debtor's "intent to defraud future undertakers [investors] from the mere fact that a debtor was running a Ponzi scheme." *Merrill v. Abbott* (*In re Independent Clearing House Co.*), 77 B.R. 843, 860 (D. Utah 1987). "Knowledge to a substantial certainty constitutes intent in the eyes of the law, cf. Restatement (Second) of Torts § 8A (1963 & 1964), and a debtor's knowledge that future investors will not be paid is sufficient to establish his actual intent to defraud them." *Id*. A trustee in bankruptcy is not required to show that an operator of a Ponzi scheme was subjectively aware his Ponzi scheme was destined to fail. *In re EPD Inv. Co., LLC*, 114 F.4th at 1153 (9th Cir. 2024).

23.     "[I]f all the debtor receives in return for a transfer is the use of the defendant's money to run a Ponzi scheme, there is nothing in the bankruptcy estate for creditors to share." *In re Independent Clearing House Co.* 77 B.R. at 859. In such a situation, the use of the defendant's money cannot objectively be called "reasonably equivalent value." *Id*. Therefore, "[t]he trustee can avoid the transfers if they were preferential or fraudulent. Transfers to investors in a Ponzi scheme are preferential and fraudulent. Therefore, they constitute 'property of the estate,' and the trustee can recover them." *Id*. at 853 n.17 (citations omitted).

24.     Based on the Ponzi Scheme presumption the Court can infer that the Debtor had the intent to defraud investors within the meaning of 11 U.S.C. § 548(a)(1). Since the transfers by Debtor to third parties, including Defendants, were made with the intent to further the Ponzi scheme, the Debtor did not receive an objectively reasonable equivalent value for such transfers, and the Trustee can avoid any such transfers because they were preferential and/or fraudulent.

**D.      Prepetition Creditors and Lawsuits**

25.     Debtor's Schedule E/F, filed on April 4, 2023, as Dk. No. 33, lists: (a) 11 unsecured creditors with priority unsecured claims totaling $374,060.04; and (b) 58 nonpriority unsecured creditors with scheduled claims totaling $141,439,158.05.

26.     The claims register in this Bankruptcy Case includes 2,554 proofs of claim, totaling in excess of $424 million of claims asserted against the Estate.

27.     At least 14 UCC-1 statements were of record securing alleged debts of the Debtor as of the Petition Date. These statements either reflected secured liens against the Debtor's assets then

COMPLAINT

4900-8689-3601,v.1

1  owned or thereafter acquired or provided evidence of the assignment or sale of substantial portions

2  of the Debtor's future income. They secured the repayment of the following claimed amounts that

3  are currently known to Trustee and are allegedly owed by the Debtor: (a) $2,374,004.82 owed to

4  Fundura Capital Group as evidenced by Proof of Claim No. 335 purportedly secured by a UCC

5  statement filed on or about May 19, 2021; (b) approximately $15 million dollars owed to MNS

6  Funding, LLC as evidenced by Proof of Claim No. 1060 purportedly secured by a UCC statement

7  filed on or about May 28, 2021; (c) approximately $5,000,000 owed to Azzure Capital, LLC as

8  evidenced by Proof of Claim No. 127 purportedly secured by a UCC statement filed on or about

9  May 28, 2021; and (d) approximately $1.5 million dollars owed to Diverse Capital, LLC purportedly

10  secured by UCC statements filed on or about September 15, 2021, and December 1, 2021.

11        28.     Debtor's balance sheets for the 36 months ending December 31, 2021, show

12  approximately $17,900,000 in total assets at its highest point in November 2021. This amount is

13  significantly less than the $424 million of claims filed.

14        29.     Debtor's Statement of Financial Affairs, filed on April 4, 2023, as Dk. No. 34,

15  reflects 15 pending lawsuits against Debtor as of the Petition Date. The lawsuits date back to

16  October 18, 2021 (*Fundura v. The Litigation Practice Group P.C. et al.*, Supreme Court of New

17  York Index No. 613192-2021) and are as recent as March 10, 2023 (*Diverse Capital LLC v. The*

18  *Litigation Practice Group P.C. et al.*, Supreme Court of New York Index No. 135614-2023).

19      **E.**    **Debtor's Insolvency**

20        30.     Debtor was insolvent when the Transfers occurred as evidenced by: (a) the 14 UCC-1

21  statements reflecting secured liens against the Debtor's owned and after-acquired assets and the

22  assignment or sale of substantial portions of the Debtor's future income; (b) the priority and non-

23  priority unsecured debt of nearly $142 million listed in Debtor's schedules; (c) the $424 million of

24  creditor claims filed in this Bankruptcy Case; and (d) Debtor's balance sheets reflecting, at its

25  highest point, $17.9 million of assets in November 2021.

26        31.     Moreover, insolvency is presumed as a matter of law where, as in this Bankruptcy

27  Case, the debtor operated a Ponzi scheme. *See, e.g., Glob. Money Mgmt., L.P. v. McDonnold*,

28  / / /

COMPLAINT
4900-8689-3601,v.1

1    No. 06CV34, 2008 U.S. Dist. LEXIS 128733, at *15 (S.D. Cal. Feb. 27, 2008) (concluding that "if a

2    Ponzi scheme is proven, then the debtor is proven insolvent from the time of its inception").

3    **F.      The Subject Transfers**

4       32.      During the four-year period prior to the Petition Date, the transfers of interests of the

5    Debtor in property were made to Defendant and/or the Doe Defendants. The full extent of the

6    Transfers will be proven at trial, but are in an amount not less than $96,298.75 (previously defined as

7    the "Transfers") as set forth in the chart attached as **Exhibit 1.**

8       33.      Plaintiff alleges that Debtor was insolvent when the Transfers were made or became

9    insolvent as a result of the Transfers.

10      34.      Plaintiff alleges that Debtor did not receive reasonably equivalent value in exchange

11   for or in connection with the Transfers.

12      35.      Pursuant to 11 U.S.C. § 550(a), Plaintiff is entitled to recover the Transfers or their

13   value from Defendant and Doe Defendants as initial or subsequent transferees.

14      36.      Under 11 U.S.C. § 551, avoided transfers are automatically preserved for the benefit

15   of the Estate.

16   **G.      Due Diligence**

17      37.      On February 11, 2025, Plaintiff caused a letter to be mailed to Defendant ("First

18   Letter") requesting documents and information to substantiate the Transfers, to assess the purpose of

19   the Transfers, and to evaluate any potential defenses to Plaintiff's avoidance and recovery of the

20   Transfers. Plaintiff received no response to the First Letter.

21      38.      Prior to filing this Complaint, Plaintiff's counsel conducted an electronic search of

22   Debtor's paper files and accounting records, including Debtor's Quickbooks files, which records and

23   files are now stored electronically. Plaintiff's search of the subject records and files revealed no

24   apparent defenses to the alleged claims.

25   / / /

26   / / /

27   / / /

28   / / /

8

COMPLAINT

4900-8689-3601,v.1

**First Claim for Relief**

**Avoidance, Preservation, and Recovery of Actual Fraudulent Transfer**

**11 U.S.C. §§ 544, 550, 551; Cal. Civ. Code §§ 3439.04(a)(1) and 3439.07**

**(Against all Defendants)**

39.     Plaintiff incorporates by reference Paragraphs 1 through 38 and realleges these paragraphs as though set forth in full.

40.     Under 11 U.S.C. § 544(b)(1), Plaintiff may avoid transfers of an interest of Debtor which are voidable under applicable law by an unsecured creditor of Debtor, including under California Civil Code § 3439.04(a)(1).

41.     The Transfers were of property of Debtor.

42.     The Transfers were made within four years of the Petition Date.

43.     The Transfers were made with the actual intent to hinder, delay, or defraud Debtor's creditors.

44.     At the time each Transfer was made, Debtor was indebted to one or more creditors that held a claim against Debtor on the date of each Transfer and on the Petition Date.

45.     Debtor had been sued or threatened with suit before some or all of the Transfers occurred.

46.     Debtor incurred substantial debt shortly before or shortly after some or all of the Transfers occurred.

47.     The LPG Insiders caused Debtor to abscond and delay the discovery of substantial assets of the Debtor pursuant to the diversion of Debtor's funds, client files, and assets to multiple sham entities.

48.     Debtor actively concealed its beneficial interest in the Fraudulent Transfers and made the payments to Defendants with actual intent to hinder, delay, or defraud other creditors of the Debtor.

49.     Sham Entities, who benefitted from the receipt of funds improperly diverted away from Debtor, would be considered insiders under Cal. Civ. Code § 3439.04(b)(1).

/ / /

9

COMPLAINT

4900-8689-3601,v.1

50.     Debtor received less than reasonably equivalent value in exchange for the Transfers. Defendant and/or Doe Defendants received at least $96,298.75 of property belonging to Debtor.

51.     The Transfers were made at a time when Debtor was insolvent and/or rendered insolvent by virtue of said transfers.

52.     The Transfers were made partially for the benefit of an insider of Debtor. The detriment of the Transfers accrued to Debtor, and Debtor received no direct or indirect benefit.

53.     Plaintiff alleges that Defendant and/or Doe Defendants did not receive the Transfers in good faith, for value, and without knowledge of their avoidability.

54.     Based on the foregoing, Plaintiff may avoid the Transfers pursuant to 11 U.S.C. § 544 and California Civil Code § 3439.04(a)(1).

55.     Based on the foregoing, Plaintiff may recover and preserve the Transfers from Defendant and/or Doe Defendants as the initial transferee or, alternatively, as the subsequent transferee for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551, and Cal. Civ. Code § 3439.07.

## Second Claim for Relief

## Avoidance, Preservation, and Recovery of Constructive Fraudulent Transfer

## 11 U.S.C. §§ 544, 550, 551; Cal. Civ. Code §§ 3439.04(a)(2), 3439.05 and 3439.07

## (Against all Defendants)

56.     Plaintiff hereby incorporates by reference Paragraphs 1 through 38 and realleges these paragraphs as though set forth in full herein.

57.     Under 11 U.S.C. § 544(b)(1), Plaintiff may avoid transfers of an interest of Debtor which are voidable under applicable law by an unsecured creditor of Debtor, including under California Civil Code §§ 3439.04(a)(2) and 3439.05.

58.     Debtor did not receive reasonably equivalent value in exchange for the funds diverted to Sham Entities.

59.     Debtor did not receive reasonably equivalent value in exchange for the Transfers.

60.     The Transfers were made at a time when Debtor was insolvent and/or rendered insolvent by virtue of said transfers.

10

COMPLAINT

4900-8689-3601,v.1

1    61.    At the time each Transfer was made, Debtor was engaged or was about to engage in a

2 business or a transaction for which the remaining assets of Debtor were unreasonably small in

3 relation to the business or transaction.

4    62.    At the time each Transfer was made, Debtor intended to incur, or believed or

5 reasonably should have believed that Debtor would incur, debts beyond Debtor's ability to pay as

6 they became due.

7    63.    At the time each Transfer was made, Debtor was indebted to one or more creditors

8 that held a claim against Debtor on the date of each Transfer and on the Petition Date.

9    64.    Sham Entities, who benefitted from the receipt of funds improperly diverted away

10 from Debtor, would be considered insiders under Cal. Civ. Code § 3439.04(b)(1).

11    65.    The Transfers were made at a time when Debtor was insolvent and/or rendered

12 insolvent by virtue of said transfers.

13    66.    Plaintiff alleges that Defendant and/or Doe Defendants did not receive the Transfers

14 in good faith, for value, and without knowledge of their avoidability.

15    67.    Based on the foregoing, Plaintiff may avoid the Transfers pursuant to 11 U.S.C. § 544

16 and California Civil Code §§ 3439.04(a)(2) and 3439.05.

17    68.    Based on the foregoing, Plaintiff may recover and preserve the Transfers from

18 Defendant and/or Doe Defendants as the initial transferee or, alternatively, as the subsequent

19 transferee for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551, and Cal. Civ. Code

20 § 3439.07.

21                        **Third Claim for Relief**

22    **Avoidance, Preservation, and Recovery of Actual Fraudulent Transfer**

23                   **11 U.S.C. §§ 548(a)(1)(A), 550 & 551**

24                        **(Against all Defendants)**

25    69.    Plaintiff hereby incorporates by reference Paragraphs 1 through 38 and realleges

26 these paragraphs as though set forth in full herein.

27    70.    One or more of the Transfers were made within two years of the Petition Date.

28 / / /

COMPLAINT
4900-8689-3601,v.1

1       71.    The Transfers were made to Defendants with the actual intent to hinder, delay, or

2 defraud Debtor's creditors.

3       72.    At the time each Transfer was made, Debtor was indebted to one or more creditors

4 that held a claim against Debtor on the date of each Transfer and on the Petition Date.

5       73.    Debtor had been sued or threatened with suit before some or all of the Transfers

6 occurred.

7       74.    Debtor incurred substantial debt shortly before or shortly after some or all of the

8 Transfers occurred.

9       75.    The LPG Insiders caused Debtor to abscond and delay the discovery of substantial

10 assets of the Debtor pursuant to the diversion of Debtor's funds, client files, and assets to multiple

11 sham entities.

12       76.    The LPG Insiders actively concealed Debtor's assets pursuant to the diversion of

13 funds, client files, and assets to sham entities.

14       77.    Sham Entities, who benefitted from the receipt of funds improperly diverted away

15 from Debtor, would be considered insiders as that term is defined in 11 U.S.C. § 101(31).

16       78.    Debtor received less than reasonably equivalent value in exchange for the Transfers

17 totaling $96,298.75.

18       79.    The Transfers were made at a time when Debtor was insolvent and/or rendered

19 insolvent by virtue of said transfers.

20       80.    Plaintiff alleges that Defendant and/or Doe Defendants did not receive the Transfers

21 in good faith, for value, and without knowledge of their avoidability.

22       81.    Based on the foregoing, Plaintiff may avoid the Transfers under 11 U.S.C.

23 § 548(a)(1)(A).

24       82.    Based on the foregoing, Plaintiff may recover and preserve the avoided transfers up to

25 the amount of the Transfers from Defendant and/or Doe Defendants as the initial transferee or,

26 alternatively, as the subsequent transferee for the benefit of the Estate under 11 U.S.C. §§ 550 and

27 551.

28 / / /

COMPLAINT
4900-8689-3601,v.1

1

## Fourth Claim for Relief

## Avoidance, Preservation, and Recovery of Constructive Fraudulent Transfer

## 11 U.S.C. §§ 548(a)(1)(B), 550 & 551

## (Against all Defendants)

83.     Plaintiff hereby incorporates by reference Paragraphs 1 through 38 and realleges these paragraphs as though set forth in full herein.

84.     One or more of the Transfers were made within two years before the Petition Date.

85.     Debtor did not receive reasonably value in exchange for the Transfers.

86.     The Transfers were made at a time when Debtor was insolvent and/or rendered insolvent by virtue of said transfers.

87.     When the Transfers occurred, Debtor's business was undercapitalized and Debtor was engaged in business for which its capital was unreasonably small.

88.     When the Transfers occurred, Debtor was about to incur debts that were beyond its ability to pay.

89.     The Transfers were made for the benefit of Defendant and Sham Entities, which were insiders of Debtor.

90.     At the time each Transfer was made, Debtor was indebted to one or more creditors that held a claim against Debtor on the date of each Transfer and on the Petition Date.

91.     Plaintiff alleges that Defendant and/or Doe Defendants did not receive the Transfers in good faith, for value, and without knowledge of their avoidability.

92.     Based on the foregoing, Plaintiff may avoid the Transfers under 11 U.S.C. § 548(a)(1)(B).

93.     Based on the foregoing, Plaintiff may recover and preserve the avoided Transfers from Defendant and/or Doe Defendants as the initial transferee or, alternatively, as the subsequent transferee for the benefit of the Estate under 11 U.S.C. §§ 550 and 551 from Defendant.

/ / /

/ / /

/ / /

13

COMPLAINT

4900-8689-3601,v.1

1 **Fifth Claim for Relief**

2 **Disallowance of Claim**

3 **11 U.S.C. § 502(d)**

4 **(Against all Defendants)**

5     94.    Plaintiff hereby incorporates by reference Paragraphs 1 through 38 and realleges

6 these paragraphs as though set forth in full herein.

7     95.    Plaintiff alleges that Defendant and/or Doe Defendants may have a claim against the

8 Estate.

9     96.    Pursuant to 11 U.S.C. § 502(d), Plaintiff requests that any claim asserted by

10 Defendant and/or Doe Defendants be disallowed unless or until the avoidable Transfers are repaid by

11 Defendant and/or Doe Defendants.

12 **Prayer**

13     WHEREFORE, Plaintiff prays for judgment against Defendant and Doe Defendants as

14 follows:

15 **On the First Claim for Relief**

16     1.    That the Transfers be avoided under 11 U.S.C. § 544 and Cal. Civ. Code

17 §§ 3439.04(a)(1) and 3439.07;

18     2.    That Plaintiff recover the avoided Transfers or a money judgment in an amount equal

19 to the value of the avoided Transfers pursuant to 11 U.S.C. § 550;

20 **On the Second Claim for Relief**

21     3.    That the Transfers be avoided under 11 U.S.C. § 544 and Cal. Civ. Code

22 §§ 3439.04(a)(2), 3439.05 and 3439.07;

23     4.    That Plaintiff recover the avoided Transfers or a money judgment in an amount equal

24 to the value of the avoided Transfers pursuant to 11 U.S.C. § 550;

25 **On the Third Claim for Relief**

26     5.    That the Transfers be avoided under 11 U.S.C. § 548(a)(1)(A);

27     6.    That Plaintiff recover the avoided Transfers or a money judgment in an amount equal

28 to the value of the avoided Transfers pursuant to 11 U.S.C. § 550;

14

COMPLAINT

4900-8689-3601,v.1

**On the Fourth Claim for Relief**

7.   That the Transfers be avoided under 11 U.S.C. § 548(a)(1)(B);

8.   That Plaintiff recover the avoided Transfers or a money judgment in an amount equal to the value of the avoided Transfers pursuant to 11 U.S.C. § 550;

**On the Fifth Claim for Relief**

9.   That any claim of Defendant and/or Doe Defendants against the Estate be disallowed in its entirety unless or until Defendant and/or Doe Defendants timely repay the avoidable Transfers;

**On All Claims for Relief**

10.   That Plaintiff only recover a single satisfaction of all avoided Transfers under 11 U.S.C. § 550(d);

11.   That all avoided Transfers be preserved pursuant to 11 U.S.C. § 551;

12.   For prejudgment interest under state law on all fraudulent transfer claims from the date each transfer was made, as set forth in *In re Slatkin*, 525 F.3d 805, 820 (9th Cir.2008), *In re Agricultural Research and Technology Group, Inc.*, 916 F.2d 528, 541-42 (9th Cir.1990), and *Field v. Kepoikai* (*In re Maui Indus. Loan & Fin. Co.*), 483 B.R. 346, 353 (Bankr. D. Haw. 2012);

13.   For pre-judgment interest on all other claims at the maximum rate allowed by law;

14.   For costs incurred by Plaintiff in prosecuting this action; and

15.   For such other and further relief as the Court may deem just and proper.


DATED: March 1, 2025                    MARSHACK HAYS WOOD LLP


                                        By: */s/ Chad V. Haes*
                                            CHAD V. HAES
                                            Attorneys for Richard A. Marshack,
                                            Plaintiff and Trustee of The LPG Liquidation Trust

COMPLAINT

4900-8689-3601,v.1

# Exhibit "1"

In re The Litigation Practice Group PC
Disbursement Details by Payee
4 Years Pre-Petition (03/20/2019 - 03/20/2023)

Inlane Inc



| Bank Name | Account Name | Account Number | Statement Date | Transaction Date | Check Number | Debit/Charge | Memo |
|---|---|---|---|---|---|---|---|
| Bank of America | Vulcan Consulting Group LLC dba DRD | 9551 | 10/31/2022 | 10/25/2022 | | 41,721.11 | WIRE TYPE WIRE OUT DATEQ21 025 TIME1 158 ET TRN 202210250034 1531 SERVICE REF 477285 BNF INLANE INC ID 727331073 BNF BK JPMORGAN CHASE BANK, N. I000O2 PMT DET 41 0195290 |
| Chase | The Litigation Practice Group PC | 3158 | 11/30/2022 | 11/14/2022 | | 15,691.61 | Book Transfer Debit NC Inlane Inc Elmhurst NY 11373-1506 US Ret. Lead Purchase Trn 8I6080031BIo |
| Bank of America | Prime Logix LLC | 9201 | 1/31/2023 | 1/20/2023 | | 38,886.03 | WIRE TYPE WIRE OUT DATE.2301 20 TIME1 652 ET TRN202301 2000463428 SERVICE REF51 0397 BNF INLANE INC. ID 727331 073 BNF BK JPMORGAN CHASE BANK, N. 1D0O02 PMT DET 42231 8622 |
| | | | | | | 96,298.75 | |

DRAFT FORM - SUBJECT TO CHANGE

Payor Accounts  BAT Inc., Coast Processing LLC, EZ Debt Relief, Maverick Management Group, Prime Logix, The Litigation Practice Group, Vulcan Consulting Group LLC

Exhibit "1"
Page 16